H. Raymond KELLETT, Jr.

v.

**UNITED STATES of America, U.S. Bureau of Prisons.**

No. C–93–668–L.

United States District Court, D. New Hampshire.

June 30, 1994.

---

Gretchen Leah Witt, U.S. Attys. Office, Concord, NH, for U.S.

Eugene Patrick McCann, Menzi & McCann, Lawrence, MA, for H. Raymond Kellett, Jr.

---

## ORDER ON MOTION TO DISMISS

LOUGHLIN, Senior District Judge.

Before the Court is Defendant's Motion To Dismiss (doc. # 8), which has been converted by this Court to a Motion For Summary Judgment, filed by the United States Bureau of Prisons ("BOP").

### Facts

The plaintiff, H. Raymond Kellett, Jr., was admitted to the New Hampshire Bar in 1975. Kellett plead guilty to making false statements to a federally insured bank and obstruction of justice on December 31, 1991 and was ultimately sentenced on January 28, 1992 to serve one year and one day at a federal prison in Montgomery, Pennsylvania.

Kellett alleges that after he served approximately three months of his sentence, prison officials recommended him for transfer to a correctional facility closer to his home and family. He further alleges that on June 2, 1992 he was informed that he would be denied transfer because Assistant United States Attorney Margaret Hinkle, who now presides as a judge in the Suffolk County Superior Court in Massachusetts, opposed his transfer. Kellett also claims that prison officials wrongly considered an erroneous figure of $800,000 as the amount of loss in the criminal case. Plaintiff formally requested a copy of his file on more than one occasion but his requests were continuously denied. Apparently, the reasons given to Kellett for the denial of transfer was "community opposition" and "threatening or coercing his secretary to lie before the grand jury." Kellett claims this information is inaccurate. Kellett has since been released from prison but nonetheless proceeds with this lawsuit seeking damages for various violations of the Privacy Act, 5 U.S.C. § 552a et seq.

### Procedure

In his complaint, Kellett sets forth the following claims: Count I, alleging that the case manager of the BOP violated the access and accuracy provisions of the Privacy Act, codified at 5 U.S.C. § 552a(d) and 5 U.S.C. § 552a(e)(5) respectively; Count II, alleging that the dormitory manager condoned and ratified the actions of the case manager by refusing to produce Kellett's file in violation of the access provisions of the Privacy Act; Count III, alleging that the prison warden violated access provisions of the Privacy Act; Count IV, alleging that the legal officer for the prison violated access provisions of the Privacy Act; Count V, alleging that regional officers of the BOP violated access and accuracy provisions of the Privacy Act; Count VI, alleging that the Director of Prisons violated access and accuracy provisions of the Privacy Act; and finally Count VII, alleging that Kellett's wife, Laurel G. Kellett, has suffered a loss of consortium as a result of the alleged violations of the Privacy Act.

Kellett seeks money damages under 5 U.S.C. § 552a(g)(4)(A) and attorney's fees and costs in accordance with 5 U.S.C. § 552a(g)(4)(B), and loss of consortium damages for his wife. In addition, Kellett asks the Court to order the production of statements found in his file made by former AUSA Hinkle in regard to his incarceration.

The United States Attorney's Office has filed a Motion to Dismiss arguing that the records at issue are exempt from the Privacy Act access requirements, the complaint does not make out a valid claim for violation of the accuracy provision of the Privacy Act, the plaintiff has not suffered "actual damages" under the Privacy Act, and that Laurel Kellett's loss of consortium claim is not recoverable under the Privacy Act.

The plaintiff responded by filing an objection to this motion, setting forth a plethora of factual allegations but very little legal authority to rebut the arguments set forth by the defendant.

Incidentally, the government has cited as the grounds to its motion Fed.R.Civ.P.

12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. Since the Court finds that this is a dispute arising out of a federal statute, specifically 5 U.S.C. § 552a et seq., subject matter jurisdiction is proper and the motion will therefore be analyzed under the single basis of Rule 12(b)(6).

■ However, since the parties in this case have strayed from mere legal arguments arising out of the complaint and have presented fact specific arguments supported by affidavits, the Court in its discretion hereby converts this motion to one for summary judgment under Fed.R.Civ.P. 56, as authorized in Rule 12(b) and 12(c). The parties have had prior notice of the Court's conversion and time to respond appropriately. *See* Order, May 19, 1994.

■ Summary judgment under Fed. R.Civ.P. 56(c) is proper only if, viewing the record in the light most favorable to the non-moving party, the documents on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). "Only disputes over facts that might affect the outcome of the suit" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.; Oliver*, 846 F.2d at 105. The moving party initially must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has made the required showing, the adverse party must "go beyond the pleadings" and designate specific facts to demonstrate the existence of a genuine issue for trial. Fed. R.Civ.P. 56(e); *Oliver*, 846 F.2d at 105.

**Issues**

The issues in this case are whether the Bureau of Prisons is liable under the Privacy Act for failing to produce various records in the plaintiff's file upon request, for failing to maintain completely accurate records in the plaintiff's file, and if so, whether the plaintiff and his wife have suffered damages recoverable under the Privacy Act.

**Discussion**

*THE PRIVACY ACT*

■ The Privacy Act ("Act"), 5 U.S.C. § 552a et seq., is a statutory vehicle to provide individuals access to information that the government maintains on them. *See Benavides v. U.S. Bureau of Prisons*, 995 F.2d 269 (D.C.Cir.1993). The Act provides the individual the right to make written requests for documents and the government must comply with the request unless the documents are privileged. *Id.* There being legitimate reasons for non-disclosure in certain types of documents, the Act recognizes this and provides for a method for agencies to exempt certain documents. *Id.* The Act also has a provision compelling the government to maintain accurate information within the records. *See Rose v. United States*, 905 F.2d 1257 (9th Cir.1990). Finally, the Act provides an individual civil remedy, places jurisdiction within the federal court, and authorizes the court to order injunctive relief, actual damages, or attorney's fees depending on the circumstances. 5 U.S.C. § 552a(g)(1).

A. Access Provision

Kellett sets forth claims for violation of the access provision of the Privacy Act, 5 U.S.C. § 552a(d), in Counts I through VI.

5 U.S.C. § 552a(d) states in pertinent part:

Each agency that maintains a system of records shall (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him ...

5 U.S.C. § 552a(d)(1).

The BOP argues that it is exempt from this provision by another provision in the Act. 5 U.S.C. § 552a(j) states that

[t]he head of the agency may promulgate rules ... to exempt any system of records within the agency from [subsection (d) ] if the system of records is ... maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal law, including ... correctional ... authorities, and which consists of (A) information compiled for the purpose of ... sentencing, confinement, releases, and paroles and probation status.

5 U.S.C. § 552a(j).

■ The BOP is considered a law enforcement agency for the purposes of the Act so that it is eligible to exempt certain records from the enforcement of the Act. *See Fendler v. United States Bureau of Prisons,* 846 F.2d 550 (9th Cir.1988). The Act allows the agency to promulgate regulations exempting it from certain provisions of the Act. *Id.* The BOP has promulgated regulations in 28 C.F.R. § 16.97(a) exempting certain records from identified sections of the Privacy Act including section (d), the access provision.

■ 28 C.F.R. § 16.97(a) lists the records that the BOP exempts from the Act. Since the Plaintiff has not argued that the list of records in 28 C.F.R. § 16.97(a) is not inclusive of the records he seeks to discover, the Court finds that the sought after records are included within this list.

The reason given by the BOP for the section (d) exemption is:

because exemption from this subsection is essential to protect internal processes by which bureau personnel are able to formulate decisions and policies with regard to federal prisoners, to prevent disclosure of information to federal inmates that would jeopardize legitimate correctional interests of security, custody, or rehabilitation, and to permit receipt of relevant information from other federal agencies, state and local law enforcement agencies, and federal and state probation and judicial offices.

28 C.F.R. § 16.97(b)(3).

Decisional law supports the position that the BOP has properly exempted itself from the access provisions of section (d) in regard to the records listed in 28 C.F.R. § 16.97.

*See Duffin v. Carlson,* 636 F.2d 709 (D.C.Cir. 1980); *Fendler,* 846 F.2d at 553. Congressional intent supports a BOP exemption from access to prison records. *See Duffin,* 636 F.2d at 713. Because the records Kellett seeks in this case are included within the scope of this exemption, the Court finds that his claims for violation of those provisions lack merit. Kellett presents no credible argument to get around this exemption.

Since no valid claim has been set forth in regard to the access provision of the Privacy Act, that issue is not appropriate for jury determination. As such, summary judgment is appropriate for Counts I through VI to the extent they set forth claims for violation of the access provision of the Privacy Act, 5 U.S.C. § 552a(d).

**B. Accuracy Provision**

Kellett sets forth claims for violation of the accuracy provision of the Privacy Act, 5 U.S.C. § 552a(e)(5), in Counts I, V, and VI.

5 U.S.C. § 552a(e)(5) states that an agency must:

maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination ...

5 U.S.C. § 552a(e)(5).

Kellett claims that the BOP violated this provision by relying on two allegedly inaccurate factual assertions in his records: (1) that the amount of loss involving his underlying conviction was $800,000; and (2) that his conviction for obstructing justice involved coercion of his secretary to testify falsely under oath. The BOP argues that even if this Court were to assume that this information was false, the plaintiff has nonetheless failed to establish a violation of the accuracy provision. Since the BOP has invited this Court to do so, it will assume that the information was inaccurate for the purpose of this Order.

■ The fact that the BOP has exempted itself from the access provision of the Privacy Act in regard to the records being

sought does not mean that it is also exempted from the accuracy provision. In fact, the BOP has a duty to maintain its records with sufficient accuracy to ensure fairness. *See Fendler v. United States Bureau of Prisons,* 846 F.2d 550 (9th Cir.1988). That is not to say, however, that simply maintaining inaccurate information in a file is an automatic violation of the accuracy provision of the Act. "Virtually everything the government does involves paperwork. Each time the government violates the Constitution, statutes or regulations, its paperwork could therefore be said to be 'inaccurate' or 'incomplete.' Not every such violation, however, gives rise to a Privacy Act claim. To hold otherwise would transform every constitutional and statutory claim based on administrative action into a Privacy Act suit." *White v. Office Of Personnel Management,* 787 F.2d 660 (D.C.Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 276, 93 L.Ed.2d 252 (1986).

▆ To establish a case for violation of the accuracy provision of the Act, a plaintiff must show that (1) the agency failed to maintain accurate records; (2) an adverse agency decision resulted from the failure to maintain accurate records; and (3) the agency's actions were willful and intentional. *See id; Hass v. United States Air Force,* 848 F.Supp. 926 (D.Kan.1994).

▆ The first element has been assumed to be true for the purposes of this motion. The second element is simply a causation element. It must be established that the inaccurate information proximately caused the adverse result. *See Glick v. Department of Justice,* 1991 WL 118263 (D.D.C.1991).

▆ The declaration of John L. Megathlin, the Administrator for National Inmate Appeals at the Central Office of the Federal Bureau of Prisons states as follows:

Upon receiving plaintiff H. Raymond Kellett's appeal, I reviewed his sentence data to determine what he had been convicted of and the length of his sentence. His sentence data indicated that he had been convicted of Making False Statements to a Federally Insured Bank and Obstruction of Justice. I concluded that Warden Sizer determined that CCC [community correc-

tion center] placement for [Kellett] would be inappropriate based upon the nature of his offense and shortness of his sentence ... I did not rely on any information concerning his alleged intimidation of witnesses.

The Declaration of Patrick T. Casey, the Warden of the Federal Prison camp at Millington, Tennessee states as follows:

I have reviewed the documentation concerning plaintiff H. Raymond Kellett's referral to CCC placement. The documentation shows that on May 29, 1992, as Warden of FPC Allenwood, I denied Plaintiff, H. Raymond Kellett, CCC placement, finding that he did not need such placement based upon community opposition from the United States Attorney's Office who prosecuted plaintiff H. Raymond Kellett and the short length of his sentence. I have been advised that in his complaint, it appears [Kellett] is arguing that his CCC placement may have been denied based on allegedly erroneous information concerning the magnitude of the fraud ($800,000) and the circumstances surrounding his obstruction of justice conviction. I did not base my decision to deny CCC placement for [Kellett] on any of the challenged information.

The Declaration of N. Lee Conner, the Deputy Regional Director for the Northeast Regional Office of the Federal Bureau of Prisons, states as follows:

On September 25, 1992, on behalf of the Regional Office, I denied [Kellett's] appeal ... of the denial of the Warden of Federal Prison Camp Allenwood, Pennsylvania for CCC placement based upon his conviction for obstruction of justice, stating that his conviction involved intimidation and coercion of his employee. Assuming Plaintiff H. Raymond Kellett is correct and this information is inaccurate, my decision would have been the same. In the appeal I needed to decide whether the Warden at FPC Allenwood properly exercised his discretion in deciding not to refer [Kellett] to CCC. I determined that the Warden at FPC Allenwood acted pursuant to Bureau of Prisons policy when he denied plaintiff [Kellett] CCC placement based upon the

United States Attorney's Office objection and the short length of plaintiff's sentence.

The court finds, in light of these declarations, signed under penalties of perjury, that Kellett's denial of CCC placement was justified on the basis of the seriousness of his underlying offense and the length of his sentence, regardless of the amount of loss involved or the nature of the obstruction of justice conviction. The evidence makes it pellucid that the $800,000 loss figure and the erroneous circumstances regarding the obstruction of justice were not substantially relied on in rendering the decision to deny CCC placement. Even if these factors were considered to some degree, their consideration would have been harmless since there was sufficient cause to deny Kellett CCC placement based on the seriousness of the underlying offense and brevity of the sentence received. In this case, the BOP has prudently exercised the discretion placed in it to make determinations regarding incarceration, classification, and segregation of prisoners. *See Pugliese v. Nelson,* 617 F.2d 916 (2d Cir.1980). These circumstances, the Court finds, are not enough to establish proximate cause. *See Rose v. United States,* 905 F.2d 1257 (9th Cir.1990); *Glick,* 1991 WL 118263; *Hewitt v. Grabicki,* 794 F.2d 1373 (9th Cir.1986); *Edison v. Department of the Army,* 672 F.2d 840 (11th Cir.1982).

 Even in the event that proximate cause was established, Kellett would have difficulty in establishing that the actions of the BOP officials were willful and intentional. The Privacy Act does not provide for a damage remedy for mere negligence or even gross negligence. Rather, a showing must be made that the agency intended on violating rights protected under the Act. *See Laningham v. United States Navy,* 813 F.2d 1236 (D.C.Cir.1987).

If the BOP officials involved did not substantially rely on the inaccurate information in Kellett's file in reaching their decision, it follows that they could not have intended to deprive him of his rights. There is no evidence in this case to establish intentional or willful conduct on the part of prison officials to violate Kellett's Privacy Act rights. *Cf.*

*Rose v. United States,* 905 F.2d 1257 (9th Cir.1990).

Kellett repeatedly and redundantly argues in his pleadings that former AUSA Hinkle was vindictive and abused her authority in recommending denial of CCC placement. However, the court finds her recommendation reasonable, again, in light of Kellett's offense and the length of his sentence. There is no indication on the record, other than mere allegation by the plaintiff, that vindictiveness played into the AUSA's decision. Former AUSA Hinkle's recommendation was not an ad hominem attack, as the plaintiff would have this Court believe. Rather, it was a recommendation which was thoroughly justified under the circumstances.

The plaintiff relies heavily, and almost exclusively, on *Sellers v. Bureau of Prisons,* where the court remanded the case for a determination of the intent element of the accuracy claim under the Act after the causation element was established. *See Sellers,* 959 F.2d 307, 312 (D.C.Cir.1992). The difference between *Sellers* and this case, however, is that in *Sellers,* the inaccurate records were substantially relied on in making the adverse determination, whereas in this case they played, at best, a very minor role in the BOP's decision.

The Court finds that, in the light most favorable to the non-moving party, Kellett, the record fails to establish a genuine issue of material fact as to his claims involving accuracy. Accordingly, summary judgment is granted as to Counts I, V, and VI to the extent they allege violations of the accuracy provision of the Privacy Act.

C. Damages

The BOP presents an additional argument that Kellett has not stated a valid claim for damages under the Act because he has alleged merely emotional damages, which the BOP argues are not included within the Act's "actual damages" language. The Court need not address this issue because it has found that the BOP has not violated the Act and, therefore, Kellett is entitled to no damages.

72

### D. Loss of Consortium

Finally, in Count VII Kellett's wife, Laurel Kellett, sets forth a claim for loss of consortium. The BOP argues that she lacks standing and has failed to exhaust administrative remedies. Again, the court need not address this issue because her claim was predicated on a violation of the Privacy Act as to her husband. There being no such violation, she does not have a valid claim for loss of consortium. Accordingly, summary judgment is granted as to Count VII.

### Conclusion

For the reasons stated herein, the Court grants the defendant's, United States Bureau of Prisons, Motion For Summary Judgment (doc. # 8) and hereby dismisses the Plaintiff's, H. Raymond Kellett, complaint in its entirety.